Good morning, Your Honors. May it please the Court, I'm Tom Hartzell. I'm representing Wendy Barahona-Panameno on this appeal, and I'd like to reserve five minutes for rebuttal if needed. You're CJA, correct? Yes, Your Honor. Okay, and are you guys being paid now? We are, Your Honor. Thank you for asking. I wanted to make sure that was going on. And the Ninth Circuit is the promptest among all the courts in paying. We try. Counsel, please be reminded that the time shown on the clock is your total time remaining. Thank you, Your Honor. All right. What the government didn't prove was the alienage of Rafael Rojel Trujillo, who is named as being an illegal alien transported by my client, and Count 5, and Ismael Chavez-Santoyo, Count 6, same status. What the government is arguing, they're arguing in this U.S. v. Noriega Perez case that, oh, I mean, good heavens, look like a duck, quack like a duck, but it's really quite distinct from that case, because the only testimony we had here about the possible status of these individuals came from the admitted video recordings from the depositions of the material witnesses. And the government is saying, oh, they've identified these other two as being illegal, but in fact, they didn't. What you have to do is, in the supplemental excerpt of records, we can read these depositions, and each of these three material witnesses were separated from the groups that they started to cross the border with from Mexico to the United States. And then they got together with other groups. And then when they got into the car separately, each of the material witnesses entered, or they testified, they entered this van separately, and Zaccheo Serrano Monzon, he testified that when he got into the car, there were already six people in there. So he clearly didn't know the six people in there. And then Cristian Correno Pedrosa testified that he was in the United States before he met up with this group that he ultimately was walking with. Now, the government says in its brief that, oh, well, this is a fellow who said that the rest of the folks he was with were illegal. Well, it's not quite that clear cut. What did they say? What did they say in response to whether their companions were illegal? What, if anything, did they say? Well, Correno Pedrosa, he was asked, did you know the status, the legal status of the group that you were with? And he answered, no. But then right after that question, he was asked, were you aware they were not in the United States legally? And he answered, yes. But that group didn't include, to anybody's knowledge, certainly there was no evidence that it included, the two people whose convictions I'm challenging here for insufficient evidence. And he was asked, besides the driver of the vehicle, was there anybody else in the vehicle before you got in? And he just says, well, I think so. You know, a kid was in there. And that's in 2223 in the supplemental excerpts of record. And then, Oboitas del Real, Omar Oboitas del Real, he is talking about the confusion he had and how he got separated from the group. But when the van arrives and he gets into the van, there's already eight people in the  So nobody, none of the material witnesses, that is, were coming into the van with these two disputed individuals. So they couldn't, unlike what the government is suggesting, identify. Counsel, would you agree that circumstantial evidence is critical here? And why, in this case, was there not enough circumstantial evidence from which the jury could reasonably infer that Rogel Ortugillo and Sanchez Santoya's aliens was, as the government alleged? Well, in response to your questions, Judge Smith, the first question, yes, circumstantial evidence is important. In this case, they're found in a van in the United States. They're not identified by anyone. The Border Patrol agent said they had foreign identification. Some people were wearing camouflage pants. It's unclear whether Rogel Ortugillo and Sanchez Santoya were wearing camouflage, which isn't that unusual. But there were two people in the van, clearly, with permission to be in the United States, the driver, my client, and her son. And there were a number of other people. And there were people who were let go. There were, I forget how many, three, four, five of the passengers in the van were let go. Three were material witnesses. Two were prosecuted without testifying. So the circumstantial evidence here is definitely watered down by the idea that the government, oh, lets some people go and doesn't let other people go, suggesting that perhaps the ones they did let go did have permission to be in the country. They weren't prosecuted. There's no testimony about those people who were let go. So here's a van with mixed people with permission, without permission. So the circumstantial evidence just isn't sufficient to prove beyond a reasonable doubt the two elements, one, that they were, in fact, citizens of another country, and two, that they did not have permission to be in this country. Well, if I understand your point, yes, circumstantial evidence is critical. It is possible for a jury to reasonably infer alienage based on what was there. You say that it's insufficient because some people were let go. Is that right? That's one of the reasons I say it's insufficient. No one identified them. Take a look at Noriega, Paris. In that case, they were talking about stash houses of long duration. They had evidence of people coming from the other side of the border, moving in and moving out of the stash houses there. There were 20 people crammed into a room in a trailer, and there, some of the people that were crammed into that room in the trailer were found to be here in the country illegally without the kind of evidence that one would normally rely on, without Border Patrol testifying that, yes, they were here illegally, and the Border Patrol didn't testify to that in this case. But in Noriega, Paris, the circumstantial evidence is really overwhelming. Here, it's not sufficiently overwhelming to establish beyond a reasonable doubt the elements of the offense for which these guys were convicted.  So your response to Noriega, Paris, is the quantity of the evidence, not the fact that it was circumstantial? The quantity and the quality, Your Honor, not the fact that it was circumstantial. Yes. Got it. Did you try the case? No, Your Honor. Okay. Did counsel below move for a directed verdict based on insufficient evidence? Well, yes and no. One of my complaints and why I'm asking this Court to find ineffective assistance as a matter of law — We ordinarily don't do that on a direct appeal. You know that. Oh, you don't ordinarily do it at all. There's just a few exceptions in which you can do it, and I'm saying this is one of them, in that there is a sufficiently developed record, because not only did the attorney at the time, he argued for a directed verdict, but not on those grounds. He admitted. He conceded that the government had proven that they were illegal aliens. He was just arguing that the driver didn't know they were, and there was no evidence of an agreement for a conspiracy. Right. So the answer is mostly no. Which the — Mostly no. Mostly he did not argue for a directed verdict based on the grounds you are now articulating. That's correct. Correct? That's correct. Thank you. Counsel, if those two counts are thrown out, would that just leave remand for resentencing in your view? Yes. If they were thrown out, remand for resentencing. If we agree with your position that there was insufficient evidence to support those two counts, then there would be a remand for resentencing without those two  Yes, Your Honor. Okay. Then we get to the phone, the whole big question of the phone. Here, the government brought in Mr. Gibbs, who testified that there's nothing on the phone that was seized from the driver, my client, that gave them any information whatsoever, and then brought in the fact that it was password protected, and talked about, you know, security features, which by — first of all, there's no relevance whatsoever, and not once did the trial attorney object to this testimony. He never moved to preclude the testimony or in advance to, you know, preclude the witness, yet the witness didn't have any testimony. This is Gibbs. And then — Well, what was the plain error in allowing this testimony? Because it suggested to the jury, when combined with the testimony of their cloud deal, I believe it was, their expert witness on alien smuggling organizations, which the attorney didn't challenge as well, that witness testified that, oh, people who smuggle aliens have security features on their phone so that we can't crack the phone. They use all of these apps. They have enhanced security. It's impossible for law enforcement to see what exactly is on the — Most people have security features on their phone, even if they're not smugglers. Well, I know. So I don't know why that would be something that the jury would infer, because probably most of the jurors had security features on their phones. Well, we have passwords. Yet the cloud deal is speaking of the various apps, the Signal app, the Telegraph, of their names I don't even remember and don't recognize, where law enforcement is incapable of getting the contents of the phone. So there's testimony right there. And then this other agent says, no, we can't get into her phone. Well, the fact is it was simply an iPhone with a password, like I have, like probably most of the people in the courtroom have. Yet it was — there was an inference able to be drawn that she's a member of a smuggling organization because this expert Gibbs testified, I can't get into her phone. And no one ever, this attorney never made it clear that it was simply password protected. So those two areas, I think, really clearly show that there was ineffective assistance as a matter of law, that he allowed this testimony in to suggest that his client's simple iPhone with a password, number one, was typical of those carried by smugglers. Number two, that, in fact, they allowed the agent to testify that he couldn't get in because he didn't have the password. And then the attorney, later on, says, well, you got into the other six phones. Oh, yeah, they gave us the passwords. They were consent searches, once again creating an inference that his client is guilty. I've got three minutes left and a lot more to say. I think I'll reserve it for rebuttal. It may have pleased the Court. Thank you, counsel. Thank you. We'll hear from the government. Good morning, and may it please the Court. Brenda McGinnis on behalf of the United States. The district court correctly found that the evidence was sufficient for a rational juror to find that the persons listed in counts five and six of the indictment were aliens. And there was no error, much less plain, in the admission of testimony that the defendant's cell phone was password protected. Viewing the evidence in the light most favorable light, to the prosecution, the district court found there was sufficient evidence. There was extensive evidence of alienage shown to the jury. The Border Patrol agent who originally testified listed each of the persons in the indictment by name. The jury was shown video of the apprehension of the defendant, and all persons, including the three witnesses whose testimony was played at trial, were shown getting out of the appellant's van at the same time. And some of them were wearing camouflaged clothing and had camouflaged backpacks. The government introduced photos of all of them, including the persons listed in counts five and six of the indictment, holding their Mexican identification cards. The three testifying witnesses testified that they illegally crossed the border, traveled through the desert, got into the appellant's van, and they were all apprehended by Border Patrol together. Did they testify that they came in with the individuals named in counts five and six? They testified. Each of the three testified something different as far as who they came in with. But they said they all met up at the, I guess, pick-up spot, quote, unquote, and they all got into the van. They were told by phone that that was the van they were supposed to get in. They got in, and the driver of the van, the defendant, gave them some directions. So that was the testimony at trial. Were you the trial counsel for this case? I was. In the Noriega Perez case, 20 total aliens were apprehended, yet only 8 testified at trial. And this court held that since the 8 aliens who testified testified that they lacked permission to enter the United States, a jury could have reasonably inferred that the others did as well. The government is not required to present testimony from all of the people apprehended. And here, based on the evidence presented, a rational juror could find that all of the occupants of the van were unlawfully present aliens. Any conflicts in the evidence should be resolved in favor of the jury's verdict, so I ask the court to affirm the jury's verdict as to those counts. Now, as far as the cell phone argument, there was no impermissible comment on the defendant's right to remain silent. And there was no prosecutorial misconduct in eliciting testimony from Agent Gabes. Well, first, there was no error. In this case, there was no evidence that the defendant was ever asked for her cell phone password. There was no evidence that she asserted her right to remain silent. The government did not draw any negative inference as to the defendant's cell phone, or even really discuss the agent's testimony in closing argument other than one sentence that there was a password on the phone, so the extraction wasn't full. There was no implication that she was supposed to give any password. The evidence was that the government got a search warrant, and because the phone was password protected, the download couldn't be completed. Passwords are not inherently negative. Passwords are very common nowadays. I don't know anyone who doesn't have a password on their phone. The mere existence of a password on a phone does not constitute a defendant's implication of their right to remain silent. And if there was any error, it certainly was not plain. To the United States' knowledge, there is no case law stating that referencing a phone password is a comment on the defendant's right to remain silent. There is no case law saying that search warrants cannot be mentioned. The government's position is that there's nothing here that is clearly wrong. And if there was any error, it did not affect the defendant's substantial rights. One witness testified about the phone password, and there was one line about the download being incomplete in closing argument. The password being discussed was incidental compared to the extensive evidence of the defendant's guilt. And if there was any error, it did not seriously affect the fairness, integrity, or public reputation of the trial. The evidence against the defendant outside of any cell phone testimony was overwhelming. The defendant was caught on video with eight undocumented non-citizens inside her vehicle, and three of those non-citizens testified under oath implicating her in alien smuggling. I did want to address the argument that the cell phone evidence was irrelevant. Well, first, it goes to what was done in the investigation. A phone was collected as evidence, and it was processed, although no evidence was produced from it. And in addition, the defendant's main defense was that she had to take the undocumented aliens to the hospital. And the government argued that the defendant had a working phone, and therefore necessity did not apply here. So the cell phone evidence was absolutely relevant at trial. So the appellant has failed to show error as to that issue. Was that in rebuttal, what you're describing? The cell phone... The lack of necessity. Yes, the lack of necessity. Did that come in in rebuttal or in direct? Some in direct and some in rebuttal. The government did have to call a rebuttal witness to testify as to the medical issues and that the defendant was using a phone at the time of the apprehension. Okay. And this court should not review the ineffectiveness claim at this time. And if it is reviewed, there is no merit to the claim. Unless Your Honors have any questions of me, I do not have anything else to add at this time. It appears not. Thank you. Rebuttal. I don't recall in the testimony the idea that the phone was evidence of anything other than we can't crack it. Again and again we went back to that. And the expert said when asked how they could download the other phones, quote, no, those phones were done under consent. So we had pass codes and we were able to get full extractions on those. And the other, Claudio, the smuggling expert says, so most of these smuggling organizations are using these encrypted applications. Right now very common applications are Snapchat, WhatsApp, Telegram, Signal, Threema. And goes on talking about how the law enforcement can't get into the smugglers' phones. So the idea that she had a phone, there was no testimony that the phone worked, just that he couldn't get into the phone. He didn't have the password. So clearly it's implicating the defendant's right to remain silent and not give up information that will help the government. And Ms. McGinnis is quite correct when there's no case law that says this is somehow violating the defendant's right to silence. But there's no case law that says it isn't. But how can it be plain error if there's no clear case law on the point? Because there just simply was not, there is no rationale, no evidence for having, no reason for having this evidence before the court of the cell phone. But our standard under plain error review is that the error is so clear that the court should have recognized it without someone pointing it out. And if there is no case law that specifically precludes this, how can we say that the district court plainly erred? And then again, in the absence of a motion to preclude or suppress or prevent that evidence from coming to the jury, it makes it even more difficult, which goes to my argument that it's... Well, but you didn't answer my question about plain error review. How can it be plain error review if there's no definitive case on it? When the government introduces witnesses and testimony without relevance that implicates, by inference, a defendant, I think it's certainly, I mean, I understand your point. And I agree sitting, if I were sitting where you're sitting, I would make the same point. It would be a stretch. But it's a stretch I'm asking the court to make that this is plainly not kosher, having these back-to-back witnesses that produce no relevant evidence but create an impermissible inference. All right. Thank you, counsel. Sure. You're welcome. Thank you to both counsel for your helpful arguments. The case is submitted for decision by the court. The final two cases on calendar for argument, Jensen v. Camco Manufacturing and White v. Prestige Default Services have been submitted on the briefs. That completes our calendar for the morning. We are on recess until 9.30 a.m. tomorrow morning. Thank you.
judges: HAWKINS, RAWLINSON, SMITH